IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 20-cr-115-1 |
| : | |
| ASHIQ ASHFORD : | |
| : | |

**Diamond, J.**                                                                                           **April 19, 2024**

## M E M O R A N D U M

In 2022, Ashiq Ashford pled guilty to a series of armed carjackings and related offenses. He faced a possible life sentence, and a Guidelines Range of 252–294 months' imprisonment. Pursuant to the Parties' "C Plea," the stipulated sentence was 168 months' imprisonment, which I was required to impose if I accepted their Plea Agreement. Fed. R. Crim. 11(c)(1)(C); (Doc. No. 201 ¶ 5.) I accepted the Agreement and imposed the 168 month sentence, which Ashford now moves *pro se* to vacate, alleging that his lawyer ineffectively failed to negotiate a shorter sentence. 28 U.S.C. § 2255; (Doc. No. 258.) Because Ashford has waived this challenge which is, in any event, meritless, I will deny relief without an evidentiary hearing.

      I.      **BACKGROUND**

In 2019, Ashford and his co-defendant Bode Rhodes carjacked a vehicle in Pennsylvania and sold it in New Jersey. (Doc. No. 196 at 5.) Ashford and others subsequently committed two more carjackings and attempted to carjack three additional vehicles. (Id. at 5–7.) During both the attempted and successful carjackings, a confederate got out of the car Ashford was driving and, brandishing a pistol, approached the victims, demanding that they give him their car keys. (Id. at 5–7.)

On March 3, 2020, the grand jury charged Ashford with interstate transportation of a stolen

vehicle (Count 1), conspiracy to commit carjacking (Count 2), five counts of armed carjacking and attempted carjacking (Counts 3, 5, 7, 9, and 10), and four counts of brandishing a firearm during and in relation to a crime of violence (Counts 4, 6, 8, and 11). (Doc. No. 19); 18 U.S.C. §§ 2312, 371, 2119, 924(c)(1), 2. After Ashford attacked the competence of Carlos Martir (his CJA appointed counsel), I allowed Mr. Martir to withdraw and appointed Jeremy H.G. Ibrahim—a vastly experienced advocate. (Doc. Nos. 121, 136.)

On August 10, 2022, Ashford, represented by Mr. Ibrahim, appeared before me and, pursuant to a written Agreement, entered a "C Plea" to Counts 1, 2, 3, 4, 5, 7, 9, and 10. Fed. R. Crim. 11(c)(1)(C); (Doc. Nos. 197, 263; Doc. No. 201 ¶ 5.) Ashford thus agreed that he would "not file any appeal, any collateral attack, or any other writ or motion that challenges" his conviction or sentence, or seek relief on grounds "that (1) the statutes to which [he pled] guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes." (Id. ¶ 13.) He retained the right to challenge his attorney's competence. (Id.)

On December 14, 2022, after reviewing Ashford's Presentence Investigation Report and hearing from the Parties, I accepted the Plea Agreement and imposed the stipulated sentence: 168 months' imprisonment, 5 years of supervision, and some $7,000 in restitution. (Doc. Nos. 222, 224, 237.) In accordance with the Agreement, I dismissed Counts 6, 8, and 11 (charging Ashford with brandishing a firearm in furtherance of a crime of violence, predicated on attempted carjacking). 18 U.S.C. § 924(c); (Doc. No. 237 at 22.)

On November 14, 2023, Ashford filed the instant § 2255 Motion, attacking Mr. Ibrahim's competence. (Doc. No. 258.) The matter is fully briefed. (Doc. Nos. 264, 270.)

II.    **LEGAL STANDARDS**

Under Section 2255, I may grant relief where: (1) "the sentence was imposed in violation

of the Constitution or laws of the United States, . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack;" or (2) "the court was without jurisdiction to impose such sentence." 28 U.S.C. § 2255(a). When deciding a § 2255 motion, I must "hold an evidentiary hearing unless the motion and files and records of the case show conclusively that [the Defendant] is not entitled to relief." United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (internal quotation marks omitted); see also 28 U.S.C. § 2255(b). In determining whether a hearing is necessary, I must accept Ashford's factual allegations as true "unless they are clearly frivolous on the basis of the existing record." Lilly, 536 F.3d at 195 (internal quotation marks omitted). I have construed his *pro se* submissions liberally. United States v. Delgado, 363 F. App'x 853, 855 (3d Cir. 2010).

I may not enforce Ashford's appellate and collateral attack waiver unless I first confirm its validity. Accordingly, I must examine the waiver's "(1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008) (citing United States v. Khattak, 273 F.3d 557 (3d Cir. 2001); United States v. Gwinnett, 483 F.3d 200 (3d Cir. 2007)).

### III. THE INSTANT MOTION

In his initial memorandum, Ashford argued that once plea negotiations began, Mr. Ibrahim should have used the recently decided *United States v. Taylor* to have the three "counts of armed carjacking convictions [sic] 'tossed' in order to diminish the [Guidelines] computation in points." 596 U.S. 845 (2022); (Doc. No. 258 at 19–20.) The Government responded (correctly) that the *Taylor* Court did not address attempted carjacking, but only whether attempted Hobbs Act robbery constituted a crime of violence under § 924(c). In his reply memorandum, Ashford advanced a

new theory: once negotiations began, Mr. Ibrahim should have had the § 924(c) charges "tossed" immediately, and so secure a more lenient stipulated sentence. (Doc. No. 270 at 2.)

Because Ashford is acting *pro se*, I will consider both theories on the merits. Compare <u>Blanc v. United States</u>, No. 14-CR-20104, 2021 WL 9528148, at *6 (S.D. Fla. May 24, 2021) (acknowledging only for completeness arguments impermissibly raised for the first time in reply) <u>with</u> <u>United States v. Martinez</u>, 475 F. Supp. 2d 154, 166–67 (D. Conn. 2007) (argument not made in an initial § 2255 brief waived, even though the defendant was *pro se,* because "a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues") <u>and Wright v. United States</u>, 139 F.3d 551, 553 (7th Cir. 1998) ("If the . . . argument was not made in [the defendant's] initial [§ 2255] brief to this court, it should have been considered waived, despite the fact that defendant was proceeding *pro se* . . . The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues.").

## IV. DISCUSSION

Ashford bases his Motion on a guess as how counsel negotiated the Plea Agreement, and how Mr. Ibrahim might have negotiated more effectively. A hearing is not required to assess such speculation.

### A. Waiver

The Government urges that in pleading guilty, Ashford waived his appellate and collateral estoppel rights. (Doc. No. 264 at 5–12.) Although he retained the right to challenge counsel's effectiveness, Ashford waived any claim that his "admitted conduct does not fall within the scope of the statute" under which he was charged. (Doc. No. 201 ¶ 13.) Yet, the gravamen of Ashford's Motion is either that under *Taylor*: (1) his three attempted carjackings are no longer valid, or (2)

the three are not "crimes of violence" under § 924(c). It is thus apparent that Ashford seeks to argue that his admitted conduct "does not fall within the scope of the statutes" he pled guilty to violating—a contention he has explicitly waived. (See Doc. No. 258 at 17–19 (Ashford details how *Taylor* "invalidated" the offenses with which he was charged); Doc. No. 270 at 8 ("[T]he *Taylor* invalidated Counts should have been striken [sic].").) To evade that waiver, he has dressed the instant claim as one of ineffectiveness—an issue he has not waived.

As I have discussed, Ashford draws his ineffectiveness claim from speculation and guess. That contrivance is plainly intended to evade his waiver so that he may seek *Taylor*'s application to his admitted offenses. Ashford may not, however, recast a substantive challenge to his convictions to escape a waiver I have already found (in accepting his guilty plea) was knowing, voluntary, and intelligent. (Change of Plea Hr'g Tr. (Doc. No. 263) (extensive colloquy during which Ashford acknowledged, *inter alia*, that he was satisfied with Mr. Ibrahim's performance)); United States v. White, 307 F.3d 336, 342 (5th Cir. 2002) (disapproving "challenges to the sentence . . . reconstituted as 'ineffective assistance' challenges"); Hurn v. McGuire, No. 04-3008, 2005 WL 1076100, at *3 (D. Kan. May 6, 2005), aff'd, 2006 WL 367846 (10th Cir. Feb. 17, 2006) (petitioner "cannot escape waiver by claiming ineffective assistance of counsel").

In these circumstances, I will deny relief on waiver grounds.

### B. Ineffective Assistance

In an abundance of caution, I will also address Ashford's ineffectiveness claim on the merits and conclude, in the alternative, that it has no merit.

Ashford must first show that Mr. Ibrahim's representation "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668 (1984). I "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. at 689. Ashford then "must show that the deficient performance prejudiced the defense." Id. at 687. Finally, Ashford "must show the outcome of the plea process would have been different with competent advice." Lafler v. Cooper, 566 U.S. 156, 163 (2012); Hill v. Lockhart, 474 U.S. 52, 59 (1985) (the defendant must prove that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,"); Strickland, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine the confidence in the outcome").

The Third Circuit has found a lawyer ineffective because he did not "know the Guidelines and the relevant Circuit precedent" relating to his client's guilty plea. United States v. Smack, 347 F.3d 533, 538 (3d Cir. 2003). As I have discussed, Ashford initially charged that Mr. Ibrahim was ineffective "for failure to keep up with recent decisions and developments with judicial precedents"— in particular, *Taylor*. (Doc. No. 258 at 16.) Ashford urged that Mr. Ibrahim should have had the three "counts of attempted carjacking convictions [sic] 'tossed' in order to diminish the [Guidelines] computation in points." (Id. at 19–20.) Ashford thus alleged that had Mr. Ibrahim sought the dismissal of those charges earlier, he would have negotiated—and the Court would have agreed to—a shorter sentence. Once again, *Taylor* did not affect the attempted carjacking charges. Rather, the *Taylor* Court addressed only whether an attempted Hobbs Act robbery constituted a "crime of violence" under § 924(c). 596 U.S. at 848. Ashford pled guilty to Counts 5, 7, and 10, charging him with attempted carjacking under 18 U.S.C. § 2119. The Government sought dismissal of the three § 924(c) charges predicated on attempted carjacking (which were not included in Probation's Guidelines calculations). (Doc. No. 237 at 22; Doc. No. 201 ¶ 2(a).) Ashford's carjacking convictions are thus unaffected by *Taylor*.

Ashford also alleges that Mr. Ibrahim should have had the § 924(c) charges dismissed

earlier. Although the § 924(c) charges predicated on attempted carjacking were not included in his Guidelines calculation, Ashford nonetheless alleges that "the [Government] based its [sentencing] calculations" on Counts 6, 8, and 11—the § 924(c) charges—which were "fully taken into account at the behind doors calculation meeting in the USA's Office." (Doc. No. 270 at 2–3.) The Government purportedly used that Guidelines Range as the "starting point in [its] analysis for the sentencing range" and "the framework that permitted the prosecution and the defendant's counsel to [negotiate for] the agreed specific sentence," which Ashford believes would have been shorter had Mr. Ibrahim negotiated using *Taylor*. (Id. at 5.) Yet, after negotiating with Mr. Ibrahim, the Government agreed both to a "C Plea" sentence some seven years shorter than the low end of Ashford's Guidelines Range, and to the dismissal of the § 924(c) charges.

Ashford alleges nothing even suggesting that he knows the details of the plea discussions between Mr. Ibrahim and the prosecutor. Ashford's belief that "the USA's Office" used the § 924(c) charges as "a starting point" for calculations made "behind closed doors" is thus sheer speculation, and so not an appropriate basis for challenging Mr. Ibrahim's competence. See Short v. United States, 471 F.3d 686, 697 (6th Cir. 2006). Mr. Ibrahim represented Ashford for some ten months. Yet, Ashford offers no examples of deficient advice actually given by Mr. Ibrahim that Ashford relied upon in pleading guilty. Nor has Ashford alleged anything to support his belief that Mr. Ibrahim was ignorant of *Taylor*. Ashford's imaginings about what the Government would have done had Mr. Ibrahim sought the immediate dismissal of the § 924(c) charges are not facts that, if proven, would entitle him to relief. Rather, as I have discussed, Ashford has contrived this ineffectiveness claim to challenge his sentence under *Taylor*—a claim he has waived. In these circumstances, an evidentiary hearing would be pointless.

The recent decision in *Fooks v. Luther et al.* does not compel a different result. (No. 21-

2097) (3d Cir. Mar. 26, 2024). There, the § 2254 petitioner had pled guilty to murder, and stipulated to a 20 to 40 year prison sentence. He alleged that he agreed to the plea and sentence only because his lawyer told him that he would be eligible for parole after he had served ten years. That purported advice was incorrect. The § 2254 petition was rejected without a hearing. The Third Circuit ruled that because the petitioner's allegations, if proven, could have entitled him to relief, the district court should have held an evidentiary hearing to determine the credibility of those allegations. Compare United States v. Arrington, 13 F.4th 331, 334 (3d Cir. 2021) (setting out § 2255 evidentiary hearing standard); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988) (same).

The instant matter is readily distinguishable. Ashford makes no fact-based allegations whose credibility should be evaluated at an evidentiary hearing. Rather, as I have discussed, to evade his waiver, Ashford has conjured a scenario by which, he believes, Mr. Ibrahim might have driven a harder bargain. It thus appears that he has moved for § 2255 relief in the hope that he can search for evidence that might support his guess. Section 2255 does not, however, provide the means to conduct a fishing expedition. See Lucas v. United States, No. 18-17240, 2022 WL 1501027, at *4 (D.N.J. May 12, 2022) ("Having failed to provide sufficient facts to suggest that the government withheld any specific documents . . . , Petitioner may not use this proceeding as a fishing expedition in the hopes of finding such documents or information."); United States v. Edwards, 442 F.3d 258, 268 (5th Cir. 2006) ("Due to the speculative and conclusory nature of the [petitioner's] allegations . . . , such a hearing would serve as nothing more than a fishing expedition."); Bracy v. Gramley, 520 U.S. 899, 908–09 (1997) (right to discovery in § 2255 case depends on whether defendant can provide "reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is entitled to relief"); see also Borden v. Allen, 646 F.3d

785, 810 n.31 (11th Cir. 2011) ("Inherent in the fact pleading requirement of the federal habeas rules is the notion that a habeas case is not a vehicle for a so-called fishing expedition via discovery, an effort to find evidence to support a claim.").

In sum, Ashford has not made out deficient performance.

Even if I were to assume *arguendo* that Mr. Ibrahim knew nothing of *Taylor*, Ashford has failed adequately to allege prejudice. Ashford must make out a reasonable probability that had Mr. Ibrahim performed competently, the Government would have offered Ashford a specific plea deal, that the deal would have resulted in a sentence shorter than 168 months, and that I would have accepted the resulting plea agreement. He has not alleged any facts even suggesting this, and nothing in the record provides the least support. Shnewer v. United States, 703 F. App'x 85, 88 (3d Cir. 2017). Ashford's claim of prejudice thus rests upon his belief that he wound up with a longer sentence than that which "competent" counsel might have negotiated. As I have described, however, Ashford faced a maximum life sentence, and a Guidelines Range of 252 to 294 months' imprisonment—a calculation that did *not* include the § 924(c) charges predicated on attempted carjacking. (PSR ¶¶ 135–137.) Ashford has not alleged—and I am at a loss to understand how—Mr. Ibrahim prejudiced Ashford: by negotiating an Agreement by which the § 924(c) charges would be dismissed; by obtaining the Government's agreement to a sentence that was 84 months less than the low end of the Guidelines Range; and by then persuading me to accept the Agreement and impose that sentence.

Plainly, Ashford has not adequately alleged prejudice.

### V.  CONCLUSION

Ashiq Ashford seeks to evade his guilty plea waiver by guessing that Mr. Ibrahim might have negotiated Ashford's plea more effectively if he had made a particular use of *Taylor*. Surely

to state Ashford's claim is to refute it. Ashford's allegations confirm that he has no idea how counsel negotiated the Plea Agreement; Ashford's speculation is not a cognizable factual allegation of deficient performance. Nor is it an adequate allegation that "the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163. Indeed, Ashford does not allege as much. If Ashford's speculation required me to hold an evidentiary hearing, it is difficult to conceive of a habeas claim that would not require the court to hold a hearing. In these circumstances, I will deny relief.

## VI. CERTIFICATE OF APPEALABILITY

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B). I may issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2255(c)(1). A defendant "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). I decline to issue a certificate of appealability as reasonable jurists could not disagree with my resolution of this matter. The issues Ashford raises are inadequate to proceed further.

An appropriate Order follows.

BY THE COURT.

/s/ Paul S. Diamond
Paul S. Diamond, J.

April 19, 2024